IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES BART LEONARDI, as Administrator for the Estate of A.W., Deceased, A Minor<br>24700 Center Ridge Road, Suite 250<br>Westlake, Ohio 44145<br><br>    Plaintiff,<br><br>v.<br><br>MATTEL, INC.<br>333 Continental Boulevard<br>El Segundo, California 90245-5012<br><br>and<br><br>FISHER-PRICE, INC.<br>636 Girard Avenue<br>East Aurora, New York 14052<br><br>    Defendants. | **COMPLAINT FOR**<br>**WRONGFUL DEATH**<br><br>**Jury Demand Endorsed Hereon** |

Now comes Plaintiff, by and through his attorneys, and for his Complaint for Wrongful Death states as follows:

1. On March 20, 2018, A.W., who was three months old at the time, suffered an untimely and tragic death by suffocation shortly after having been placed in a Fisher-Price Rock-n-Play sleeper for the night.

2. Fisher-Price, Inc. and its parent, Mattel, Inc., touted their Rock-n-Play sleeper as a safe product in which babies could sleep "all night long." On April 12, 2019, however, Fisher-Price and Mattel recalled all 4.7 million of their Rock-n-Play sleepers and told parents to stop using them

1

because of their propensity to cause suffocation deaths. Unfortunately, the recall came far too late for A.W. and her parents, who had no reason to know that the product posed a danger of asphyxiation if it was used as the defendants directed.

## THE PARTIES

3. This action for damages arising from A.W.'s suffocation and death as a result of her family's unwitting use of defendants' dangerous and defective product is brought by James Bart Leonardi, the duly appointed administrator of A.W.'s estate, for the benefit of A.W.'s statutory beneficiaries and estate as provided under Ohio's wrongful death and survival statutes.

4. Defendant Mattel, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 333 Continental Boulevard, El Segundo, California 90245-5012.

5. Defendant Fisher-Price, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 636 Girard Avenue, East Aurora, New York 14052. At all times relevant, Fisher-Price is and has been a wholly-owned subsidiary of Mattel.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

7. Venue of this action is proper in this Court under 28 U.S.C. § 1391 and Loc. R. 3.8 as A.W.'s injuries and untimely death took place in this judicial district and division.

8. This Court has personal jurisdiction over the defendants in this action under O.R.C.

§ 2307.382, Ohio's long arm statute, in that (a) A.W.'s injuries and death were caused in Ohio by defendants' tortious design and manufacture of the Rock-n-Play sleeper outside of Ohio, and (b) both defendants regularly do and solicit business in Ohio and derive substantial revenue from goods used or consumed in this state such that they are subject to personal jurisdiction.

9. Fisher-Price and Mattel are leading global designers and producers of toys and other child care and development products. Defendants sell their educational and child development products directly to major retailers, including discount and department stores in Ohio, who then sell those products directly to Ohio consumers.

10. According to their regulatory filings, defendants' two largest customers (both North American and worldwide) are Walmart and Target, who alone collectively accounted for more than $1.5 billion of defendants' overall revenues during 2018. Upon information and belief, sales of defendants' products in Ohio through these retailers and others represent a proportionate share of these and other revenues, such that these defendants are subject to personal jurisdiction in Ohio for purposes of the claims at issue in this action.

**GENERAL ALLEGATIONS**

11. Shortly after midnight on March 20, 2018, A.W.'s father placed A.W. in a Rock-n-Play sleeper. A.W. was born on Christmas day in 2017, and the Rock-n-Play sleeper had been purchased at the Target store located in Steelyard Commons in Cleveland, Ohio in early 2018.

12. The Rock-n-Play sleeper is an inclined infant sleep product designed, manufactured, and marketed by defendants Fisher-Price and Mattel. It is designed specifically to hold a baby at a thirty-degree angle, with her head elevated.

13. At approximately 2:30 a.m., A.W.'s father went to check on her in the sleeper and

found she was not breathing.

14. A.W.'s father immediately removed A.W. from the sleeper and called 911, then administered CPR as directed by the dispatcher. Emergency medical personnel arrived promptly and transported A.W. to MetroHealth Medical Center, where, despite all efforts to save her life, she was pronounced dead at approximately 3:35 a.m. The cause of death was reported as accidental suffocation.

15. From the time the Rock-n-Play sleeper was introduced into the market in 2009, defendants touted it as a way for babies and their parents to achieve safe and restful sleep. Defendants promoted the Rock-n-Play as being "designed **for all–night sleep**." That phrase, along with phrases like "Designed with **restful nights** in mind!" and "Baby can sleep at a comfy incline **all night long**!"[1] were prominently displayed on the product's packaging, and were a major element of defendants' marketing of the Rock-n-Play to consumers.

16. After the Rock-n-Play was introduced into the market, however, reports began to surface of infant deaths and suffocation incidents involving babies that were placed in the Rock-n-Play as directed by the manufacturer. These reports date back to 2011 and were known to defendants well before the sale of the Rock-n-Play at issue, as was the product defect to which the injuries and deaths were attributable.

17. Defendants were aware of these reports, but they knew or should have known of the danger posed by their product well before the product even went to market. Specifically, at the time the product was designed, and at all times while defendants marketed the product as an infant sleep

---

[1] The emphasis in these phrases is not supplied, but comes from the product packaging itself.

aid, defendants knew or should have known that its inclined design was inherently unsafe for infant sleep, as it actually *created* a substantial risk of infant suffocation. Defendants also knew or should have known that the reported deaths and injuries of babies placed in the Rock-n-Play were attributable, in whole or in part, to defendants' defective design of their product and their improper and misleading marketing of the product as being particularly suitable for "all-night" infant sleep.

18. Even though defendants knew or should have known about the danger posed by the unsafe design of their product, it took the impending release of a Consumer Reports investigation linking the Rock-n-Play to at least 32 infant deaths to spur defendants to issue *any* form of warning about the risks posed by using the Rock-n-Play as an infant sleep aid. The warning, which coincided with the release of the Consumer Reports investigation, was issued on April 5, 2019, and was followed by a full recall of the product on April 12, 2019.

19. The warning and recall came too late for A.W., whose parents had no reason to believe at the time of A.W.'s death that the product could be deadly when used for the very purpose for which it was marketed.

20. Plaintiff brings this action for relief against defendants pursuant to Ohio's product liability statutes, O.R.C. § 2307.71 *et seq.*, and Ohio's wrongful death and survival statutes.

21. At all times pertinent hereto, defendants were designers, manufacturers, assemblers and/or suppliers of the subject Rock-n-Play and its component parts as these terms are defined under O.R.C. § 2307.71.

**COUNT I – PRODUCT LIABILITY**
**O.R.C. § 2307.75 (DEFECTIVE DESIGN)**

22. The preceding paragraphs are realleged as if fully restated herein.

23. Defendants designed, manufactured, tested, inspected, warranted, marketed, and

distributed the Rock-n-Play for purchase by consumers, and especially for use as a sleep aid for infants.

24. The Rock-n-Play inclined sleeper at issue in this action was defective in design and formulation for purposes of O.R.C. § 2307.75 when it left the control of defendants in that the foreseeable risks associated with its design far exceeded the benefits associated with its design and formulation.

25. Instead of being safe and suitable for use as an infant sleep aid, the design and formulation of the Rock-n-Play rendered it especially dangerous and specifically unsuitable for use as an aid to full-night sleep for infants in that, among other things,

    a. the design permits an infant to move into an unsafe position where her face lies against the side or bottom of the sleeper surface, causing asphyxiation;

    b. the degree of the inclined angle can cause positional asphyxiation (i.e., asphyxiation resulting from the infant's inability to keep her head and neck from falling into a position that restricts her airway);

    c. the degree of the inclined angle violates safe sleep guidelines issued by the American Academy of Pediatrics, which mandate that infants sleep on a flat firm surface in order to avoid the risk of positional asphyxiation; and

    d. the design and formulation poses other foreseeable and unreasonable risks as will be shown at trial.

26. The risk of asphyxiation posed by the design and formulation of the Rock-n-Play was great and highly foreseeable to defendants, especially in light of the intended and reasonably foreseeable use of the product as a sleep aid for infants, as was the likelihood that the product would,

in fact, cause such harm to occur to infants when used as defendants intended.

27. Product users, on the other hand, were unlikely to be aware of the risk of such harm when using the product as defendants intended, especially given that defendants specifically marketed the product as a safe way to help infants sleep.

28. For similar reasons, the design and formulation of the Rock-n-Play was also more dangerous than a reasonably prudent consumer would expect when used for its intended purpose as an infant sleep aid.

29. The danger of asphyxiation and death posed by the design and formulation of the Rock-n-Play far outweighed any possible utility the product might have, and a safer alternative design was both technically and economically feasible at the time the product was placed on the market, and at the time of A.W.'s death.

30. These defects in the Rock-n-Play's design and formulation were a direct and proximate cause of A.W.'s asphyxiation and wrongful death, for which her estate and statutory beneficiaries are entitled to recover damages as alleged more fully below.

## COUNT II – PRODUCT LIABILITY
## O.R.C. § 2307.76 (FAILURE TO WARN)

31. The preceding paragraphs are realleged as if fully restated herein.

32. At the time it left their control, and at the time of marketing, defendants knew, or in the exercise of reasonable care should have known that the Rock-n-Play posed a substantial risk of death or injury by asphyxiation, yet they failed to provide consumers with an appropriate warning or instruction as to that risk.

33. In addition, and in the alternative, at a reasonable time after the Rock-n-Play left their control, defendants knew, or in the exercise of reasonable care should have known of the risk and

failed to provide the post-marketing warning or instruction that a manufacturer exercising reasonable care would have provided concerning the risk, in light of the likelihood and seriousness of the risk of death by asphyxia posed by their product.

34. Though defendants had every reason to know of the risk, the risk of death by asphyxia posed by defendants' product was not open and obvious, nor was it a matter of common knowledge to parents and consumers.

35. Defendants' failure to warn that its product was unreasonably dangerous was a direct and proximate cause of A.W.'s asphyxiation and wrongful death, for which her estate and statutory beneficiaries are entitled to recover damages as alleged more fully below.

## COUNT III – PRODUCT LIABILITY
## O.R.C. § 2307.77 (FAILURE TO CONFORM)

36. The preceding paragraphs are realleged as if fully restated herein.

37. At the time the Rock-n-Play left defendants' control, it did not conform to defendants' express representation, prominently featured on the product packaging, that the Rock-n-Play was suitable as an all-night sleep aid for infants.

38. Because it failed to conform to defendants' express representation, the Rock-n-Play was defective for purposes of O.R.C. § 2307.77, regardless of whether defendants acted fraudulently, recklessly, or negligently in making the representation.

39. As a direct and proximate result, A.W. sustained fatal injuries, for which her statutory beneficiaries and estate are entitled to recover damages as set forth below.

## COUNT IV – WRONGFUL DEATH AND SURVIVAL

40. The preceding paragraphs are realleged as if fully restated herein.

41. As a direct and proximate result of defendants' wrongful conduct, A.W. sustained

fatal injuries for which her estate and statutory beneficiaries are entitled to recover damages under Ohio's wrongful death and survival statutes. These damages include, but are not limited to, the beneficiaries' loss of A.W.'s support, services, and society, as well as the mental anguish they have incurred as a result of A.W.'s tragic death.

WHEREFORE, Plaintiff James Bart Leonardi, as the duly appointed administrator of the estate of A.W. a deceased minor, prays for judgment against defendants Mattel, Inc. and Fisher-Price, Inc., jointly and severally for

a. all compensatory damages available to the statutory beneficiaries and the estate;

b. costs, including attorney's fees; and

c. such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/ David M. Paris*
David M. Paris (Ohio S. Ct. No. 0001358)
Jordan D. Lebovitz (Ohio S. Ct. No. 0091247)
Brenda M. Johnson (Ohio S. Ct. No. 0062474)
NURENBERG, PARIS, HELLER &
McCARTHY CO. L.P.A.
600 Superior Avenue East, Suite 1200
Cleveland, Ohio 44114
Tel: (216) 621-2300 / Fax: (216) 771-2242
email: Dparis@nphm.com
JordanLebovitz@nphm.com
Bjohnson@nphm.com

Attorneys for Plaintiff